**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

ANDREAS GUSTOV RINDFLEISCH, *Individually and as Administrator of the Estate of Andreas Gustov Rindfleisch IV*; BETTY GRAF; ANDREAS GUSTOV RINDFLEISCH, III; BRENDA LEE LOERZEL; DAVID GRAF; MARTIN RINDFLEISCH,

                    Plaintiffs,

          - v -                                        Civ. No. 9:09-CV-824
                                                              (FJS/RFT)

LESTER N. WRIGHT, *M.D., M.P.H., Chief Medical Officer for the New York State Department of Correctional Services*; DAVID F. NAPOLI, *Superintendent of the Southport Correctional Facility*; JOSEPH HALUSKA, *D.O., Medical Director at the Southport Correctional Facility*; CATHY FELKER, *Nurse Administrator at the Southport Correctional Facility*; LISA MARIE HAYTH, *Dental Hygienist at the Southport Correctional Facility*; ANGELA M. GORG, *R.N., Nurse at Southport Correctional Facility*,

                    Defendants.

**APPEARANCES:**                          **OF COUNSEL:**

KOOB, MAGOOLAGHAN LAW FIRM                JOAN MAGOOLAGHAN, ESQ.
Attorneys for Plaintiffs
221 Devoe Avenue
Yonkers, NY 10705

HON. ANDREW M. CUOMO                      ROGER W. KINSEY, ESQ.
Attorney General for the State of New York   Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, NY 12224

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

**REPORT-RECOMMENDATION and ORDER**

        Plaintiffs are the family and administrator of the estate of Gustov Rindfleisch IV (hereinafter

"Decedent"), who died while in the custody of the New York State Department of Correctional

Services ("DOCS").  Plaintiffs bring this action, pursuant to 42 U.S.C. § 1983 and New York State

common law, seeking compensatory and punitive damages against Defendants for their alleged

deliberate indifference to Decedent's serious medical needs in violation of the Eighth Amendment,

and for their alleged violation of his family members' right to association and companionship under

the First and Fourteenth Amendments.  Dkt. No. 1, Compl.  Plaintiffs also bring state law claims of

negligence and medical malpractice.  *Id.*  Presently before the Court is Defendants' Motion to

Dismiss the Complaint pursuant to FED. R. CIV. P. 12(b)(6).  Dkt. No. 15.  Plaintiffs oppose the

Motion.  Dkt. No. 19.  For the reasons that follow, it is recommended that Defendants' Motion be

**granted in part** and **denied in part**.

## I. BACKGROUND

In accordance with the applicable standard of review to be utilized when addressing a motion

to dismiss under FED. R. CIV. P. 12(b)(6), the Court must accept as true the factual allegations raised

in the Complaint.  *See infra* Part II.A.

In July 2007, while in DOCS's custody, Decedent was transferred to Southport Correctional

Facility (hereinafter "Southport").  Dkt. No. 1, Compl. at ¶ 12.  At all times relevant to this lawsuit,

Southport was a high-tech, freestanding total lock-down unit that held approximately 700 inmates

in solitary confinement.  *Id.* at ¶ 13.  Decedent made a sick call request on July 31, 2007, requesting

treatment from medical and/or dental personnel because one of his teeth had broken off.  *Id.* at ¶ 14.

Despite his request for treatment, he received none.  *Id.* at ¶ 15.  By September 5, 2007, Decedent

had developed a dental abscess that gave him excruciating pain and discomfort and caused his face

to swell.  *Id.* at ¶¶ 16-17.  A dental abscess is an infection that presents in the mouth and requires

antibiotic treatment.  *Id.* at ¶ 18.  Left untreated, a dental abscess can cause severe pain, swelling,

nausea, vomiting, fevers, and, if left untreated, death. *Id.* at ¶ 19. At all times relevant to this action Decedent suffered from depression and diabetes. *Id.* at ¶ 20. A tooth abscess can require immediate medical intervention when the patient suffers from diabetes. *Id.*

During this time, Decedent was seen by medical personnel at Southport twice a day in order to receive treatment for his diabetes. *Id.* at ¶ 21. On or around September 5, 2007, Southport medical personnel were made aware of Decedent's need for medical treatment for his abscess, but he received none. *Id.* at ¶¶ 22-23. Without treatment, Decedent's condition continued to worsen each day, and by September 9, 2007, Decedent's face was dramatically swollen and he was in constant and excruciating pain. *Id.* at ¶¶ 24-25.

On September 9, 2007, Decedent submitted a sick call request slip containing the words "EMERGENCY, EMERGENCY, EMERGENCY," and stating that he was in extreme pain from the abscess. *Id.* at ¶ 26. On the morning of September 10, 2007, Decedent was taken to the dental clinic; he was still in excruciating pain, his face was swollen, and the abscess had begun to bleed. *Id.* at ¶¶ 29 & 37-38. While confined in a holding cell awaiting treatment, Decedent vomited. Vomiting is a symptom consistent with the presence of an abscess. *Id.* at ¶¶ 31-32. Defendant Lisa Marie Hayth, Dental Hygienist at Southport, was made aware that Decedent was brought to the clinic pursuant to an emergency sick call request, that he had specifically requested treatment for a tooth abscess, and that he had vomited while waiting, but she did not examine Decedent nor offer any treatment, but rather, abandoned him. *Id.* at ¶¶ 30, 33, & 35. Defendant Nurse Angela M. Gorg was also made aware that Decedent had been brought to the clinic pursuant to an emergency sick call request for treatment of his abscess, but she failed to immediately administer antibiotics or otherwise initiate medical treatment. *Id.* at ¶ 39-42. At no time were antibiotics administered to

*-3-*

Decedent on September 10, 2007. *Id.* at ¶ 43.

After seeing Defendants Hayth and Gorg on the morning of September 10th, Decedent was returned to his cell without any treatment, where his condition continued to deteriorate. *Id.* at ¶¶ 45 & 48. Later that day, at or around 4:30 p.m., medical personnel administering diabetes medication to Decedent observed his medical condition and ascertained that he was in severe pain. *Id.* at ¶ 50. At approximately 5:30 p.m., a nurse informed Defendant Joseph Haluska, who had treated Decedent for his medical conditions since the start of his confinement at Southport in July 2007, of Decedent's condition; Haluska prescribed Tylenol. *Id.* at ¶¶ 51-52. In September 2007, Decedent's daily medication included Coumadin, which is contra-indicated for a patient suffering from a tooth abscess. *Id.* at ¶¶ 55 & 57. Haluska did not order the immediate discontinuance of Coumadin to Decedent. *Id.* at ¶¶ 56 & 59.

On the morning of September 11, 2007, Decedent returned to the medical clinic and was again seen by Defendant Gorg. By that time, Decedent's face was grossly swollen and he complained to Gorg of pain and difficulty swallowing and sleeping. *Id.* at ¶ 46. However, Gorg failed to attend to Decedent's medical condition. *Id.* In the afternoon of September 11th, approximately forty-five (45) days after Decedent broke his tooth and initially requested medical care, he was transferred to an outside hospital. *Id.* at ¶ 64. Upon his arrival at the hospital, Decedent experienced extreme pain in his neck, his airways were severely restricted causing him difficulty breathing, he was unable to swallow, the left side of his face was grossly swollen, and his body was infected with bacteria due to the untreated tooth abscess. *Id.* at ¶ 65. Hospital medical personnel immediately terminated the administration of Coumadin and began a course of intravenous antibiotic treatment, but that treatment was delivered too late to effectively respond to Decedent's condition,

and he died on September 15, 2007.  *Id.* at ¶¶ 66-67.

Plaintiffs allege that Defendants Lester Wright, DOCS's Chief Medical Officer, David Napoli, Superintendent of Southport, Haluska, and Cathy Felker, Nurse Administrator at Southport, failed to: (1) train dental, nursing, and medical professionals at Southport in the coordination and delivery of necessary medical care to the inmate population; (2) provide for the proper supervision of dental, nursing, and medical professionals at Southport; and (3) provide an effective system of medical, nursing, and dental health care at Southport.  *Id.* at ¶¶ 68 & 70.  It is also alleged that Defendants Wright and Napoli failed to provide adequate resources and/or an adequate number of dental, nursing, and medical professionals to treat the inmate population at Southport.  *Id.* at ¶ 68.

## II. DISCUSSION

### A. Standard of Review

On a motion to dismiss, the allegations of the complaint must be accepted as true.  *See Cruz v. Beto*, 405 U.S. 319, 322 (1972).  The trial court's function "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980).  "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

"Generally, in determining a 12(b)(6) motion, the court may only consider those matters alleged in the complaint, documents attached to the complaint, and matters to which the court may take judicial notice."  *Spence v. Senkowski*, 1997 WL 394667, at *2 (N.D.N.Y. July 3, 1997) (citing *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991)).  Moreover, "even if not attached or incorporated by reference, a document 'upon which [the complaint] *solely* relies and which is

*integral to the complaint*' may be considered by the court in ruling on such a motion." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) (emphasis added).

The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *See Retail Clerks Intern. Ass'n, Local 1625, AFL-CIO v. Schermerhorn*, 373 U.S. 746, 754 n. 6 (1963); *see also Arar v. Ashcroft*, 532 F.3d 157, 168 (2d Cir. 2008). Nevertheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937, 1949 (2009). Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id.* (citation omitted).

A motion to dismiss pursuant to Rule 12(b)(6) may not be granted so long as the plaintiff's complaint includes "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. at 1950 (citing *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. at 1949. This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Thus, in spite of the deference the court is bound to give to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts [which he or she] has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Assoc. Gen. Contractors of California, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983). The process of determining whether a plaintiff has "nudged [his] claims . .

. across the line from conceivable to plausible," entails a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, __ U.S. __ 129, S.Ct. at 1950-51.

## B.  Overview of Plaintiffs' Claims

By their Complaint, Plaintiffs Andreas Gustov Rindfleisch, Betty Graf, Andreas Gustov Rindfleisch, III, Brenda Lee Loerzel, David Graf, and Martin Rindfleisch (hereinafter "Decedent's Family") bring individual causes of action on their own behalf and Plaintiff Andreas Gustov Rindfleisch brings claims on behalf of the Decedent's estate as its administrator.  The causes of action brought on the Decedent's behalf are as follows: (1) Eighth Amendment deliberate indifference against Defendants Hayth, Gorg, and Haluska (First Claim); (2) Supervisory liability and gross negligence against Defendants Wright, Napoli, Haluska, and Felker based on the deliberate indifference claim, Compl. at ¶¶ 78-85 (Second Claim); (3) Negligence against Defendants Wright, Napoli, Haluska, and Felker, Compl. at ¶¶ 93-96 (Fifth Claim); and (4) Negligence and medical malpractice against Defendant Haluska, Compl. at ¶¶ 97-99 (Sixth Claim). Decedent's family members bring individual, non-derivative[1] claims based on their alleged First and Fourteenth Amendment rights to intimate association and loss of companionship against Defendants Hayth, Gorg, Haluska, Wright, Napoli, and Felker, Compl. at ¶¶ 86-92 (Third and Fourth Claims).

We address Decedent's family members' individual claims first, and then proceed to analyze

---

[1] Defendants assert that Decedent's family members lack standing to bring derivative claims on Decedent's behalf.  Dkt. No. 15, Defs.' Mem. of Law at pp. 5-10.  The law is clear that derivative claims, such as wrongful death and loss of consortium are not cognizable under § 1983. *See, e.g., Pritzker v. City of Hudson*, 26 F. Supp. 2d 433, 445 (N.D.N.Y. 1998) ("Loss of consortium is not an independent cause of action, but is derivative. . . . [and s]ection 1983 does not support a derivative claim for loss of consortium.").  However, Decedent's Family makes clear in their Complaint and Response in Opposition to Defendants' Motion that their claims are not derivative, but are individual and based on their own alleged First and Fourteenth Amendment rights. *See* Compl. at ¶¶ 86-92; Dkt. No. 19, Pls.' Resp. in Opp'n to Defs.' Mot. at pp. 9-11.  Therefore, we need not discuss further Defendants' lack of standing argument.

the claims brought on Decedent's behalf.

### C. Intimate Association/Loss of Companionship

Decedent's family members bring individual, non-derivative claims premised upon their alleged First and Fourteenth Amendment rights to intimate association and companionship. Defendants assert that these Plaintiffs have failed to state a cause of action under § 1983.

The Supreme Court has acknowledged that citizens enjoy protected rights of intimate association in two distinct ways: (1) the right "to enter into and maintain certain intimate human relationships" without "undue intrusion by the State," (categorized as intimate association rights); and (2) the "right to associate for the purpose of engaging in those activities protected by the First Amendment – speech, assembly, petition for the redress of grievances, and the exercise of religion," (categorized as expressive association rights). *Roberts v. United States Jaycees*, 468 U.S. 609, 617-18 (1984) (quoted in *Agostino v. Simpson*, 2008 WL 4906140, at *9 (S.D.N.Y. Nov. 17, 2008)).  The precise source of the right to intimate association remains unclear. *Adler v. Pataki*, 185 F.3d 35, 42 (2d Cir. 1999) (noting that it is unclear from which amendment the right of intimate association is derived as it has not been "authoritatively determined"); *Oglesby v. Eikszta*, 2007 WL 1879723, at *10 (N.D.N.Y. June 28, 2007) ("[T]he source of a right to intimate association in the U.S. Constitution is anything but obvious.").  Generally, courts faced with this issue seem to agree that intimate association claims related to rights of speech and petition are analyzed under the First Amendment's Freedom of Association Clause, while claims related to familial relationships fall under the liberty interests protected by the substantive due process component of the Fourteenth Amendment. *Thompson v. Ashe*, 250 F.3d 399, 406-07 n.1 (6th Cir. 2001); *Garten v. Hochman*, 2009 WL 302267, at *6 (S.D.N.Y. Jan. 28, 2009) (intimate relationship claims with regard to parent-child

relationships arise under the Fourteenth Amendment, not the First); *Pizzuto v. County of Nassau*, 240 F. Supp. 2d 203, 208-09 n.2 (E.D.N.Y. 2002) ("[T]he freedom to associate guaranteed by the First Amendment protects association interests related to speech and petition[.]").  Relationships between children and parents, siblings, and spouses "receive the greatest degree of protection because they are among the most intimate of relationships." *Patel v. Searles*, 305 F.3d 130, 136 (2d Cir. 2002).

This issue has not been definitively decided in the Second and Fifth Circuits.  *See, e.g.,Pizzuto v. Cnty. of Nassau*, 240 F. Supp. 2d at 208-13 (looking to other Circuits for guidance in the absence of clear direction from the Second Circuit); *see also Irvin v. Foti*, 2000 WL 280026, at *4 (E.D. La. Mar. 13, 2000) (granting qualified immunity because no case controlling in the Fifth Circuit has "'clearly established' the right of recovery under section 1983 for intrusion upon relationship between a parent and her adult child. . . . either with or without a requirement of demonstrating intentional conduct"); *Molette v. City of Alexandria*, 2005 WL 2445432, at *5-6 (W.D. La. Sept. 30, 2005) (following the Tenth Circuit decision in *Trujillo v. Bd. of County Comm'rs*, 768 F.2d 1186, which requires a showing of intentional interference); *see also Agostino v. Simpson*, 2008 WL 4906140, at *10 (noting the uncertainty in the state of the law with regard to intentional interference with relationship between a parent and adult child).

Although the Second Circuit has not definitively weighed in on this precise issue, virtually all other Circuits considering the issue have determined that, when family members have been deprived of an adult family member, a defendant's intent to interfere with the relationship is a necessary component to show a protected liberty interest existed in maintaining that relationship. *Reasonover v. St. Louis County*, 447 F.3d 569, 585 (8th Cir. 2006) ("A defendant can be held liable

for violating a right of intimate association only if the plaintiff shows an intent to interfere with the relationship." (internal quotation marks and citation omitted)); *Russ v. Watts*, 414 F.3d 783, 791 (7th Cir. 2005) (overruling *Bell v. City of Milwaukee*, 746 F.2d 1205 (7th Cir. 1984), insofar as "it recognized a constitutional right to recover for the loss of the companionship of an <u>adult</u> child when that relationship is terminated as an incidental result of state action." (emphasis added)); *Shaw v. Stroud*, 13 F.3d 791, 805 (4th Cir. 1994) ("[B]ecause the Supreme Court has never extended the constitutionally protected liberty interest incorporated by the Fourteenth Amendment due process clause to encompass deprivations resulting from governmental actions affecting the family only incidentally, we decline to sanction such a claim at the present time."); *Ortiz v. Burgos*, 807 F.2d 6, 9 (1st Cir. 1986) (declining to acknowledge a liberty interest where the governmental action wasn't "directly aimed at the relationship between a parent and a young child[,]" as opposed to "an incidental deprivation of the relationship"); *Trujillo v. Bd. of Cnty. Comm'rs of Santa Fe Cnty.*, 768 F.2d 1186, 1190 (10th Cir. 1985) ("[A]n allegation of intent to interfere with a particular relationship protected by the freedom of intimate association is required to state a claim under section 1983."). The Ninth Circuit appears to be the only Circuit where "intent" is not mandated.[2]  *Curnow v. Ridgecrest Police*, 952 F.2d 321, 325 (9th Cir. 1991); *Smith v. City of Fontana*, 818 F.2d 1411, 1417-18 (9th Cir. 1987), *overruled on other grounds by Hodgers-Durgin v. de la Vina*, 199 F.3d 1037 (9th Cir. 1999); *see also Rentz v. Spokane County*, 438 F. Supp. 2d 1252, 1263-65 (E.D. Wash. 2006) (tracing the genesis and progression of the Ninth Circuit's view on this issue and applying such mandated authority with sober reservation).

　　　　In support of this claim, Decedent's Family cites to the Second Circuit's decision in *Patel*

---

[2] The Ninth Circuit does not, however, appear to recognize a liberty interest in maintaining a sibling relationship. *Ward v. City of San Jose*, 967 F.2d 280, 283-84 (9th Cir. 1991).

*v. Searles*, wherein the Second Circuit stated it had "never held that a challenged action must be directed at a protected relationship for it to infringe on the right to intimate association." 305 F.3d at 137. However, we read this statement as a commentary on the state of the law as of the date of that decision, not an indication of the Circuit's posture one way or another. In fact, the *Patel* Court declined to answer that question since the intent component was evident in the facts before them. *Id.* ("[I]n any event, [plaintiff] has alleged facts sufficient to prove that the [defendants'] conduct *was* intentionally directed at his family." (emphasis in original)). Though this question remains unanswered by the Second Circuit, district courts within our Circuit consistently follow the direction of virtually all other Circuit Courts and hold that when it comes to asserting claims of governmental interference with intimate familial relationships with an adult son/daughter/sibling, a plaintiff must allege that a particular defendant's actions were undertaken for the purpose of interfering with such relationship; without the intent component, courts have ruled that a § 1983 claim cannot be maintained. *See Laureano v. Goord*, 2007 WL 2826649, at *10-12 (S.D.N.Y. Aug. 31, 2007); *Busch v. City of New York*, 2003 WL 22171896, at *5 (E.D.N.Y. Sept. 11, 2003); *Pizzuto v. County of Nassau*, 240 F. Supp. 2d 203.

The other cases cited by Plaintiffs are not on point since many of those cases concern First Amendment associational rights, *i.e.*, governmental intrusion into a familial relationship as retaliation for a family member's exercise of his/her First Amendment rights. Pls.' Resp. at pp. 12-14 (citing *Adler v. Pataki*, 185 F.3d 35, 44 (2d Cir. 1999) (plaintiff alleged he was fired from his job due to his employer's annoyance with his wife's civil rights action) & *Sutton v. Vill. of Valley Stream*, 96 F. Supp. 2d 189, 193 (S.D.N.Y. 2000) (plaintiff alleged adverse employment action taken in retaliation for his father's political views)). It is true that no element of intent was required in

those cases, but that is because the courts analyzed those claims pursuant to First Amendment analysis, *i.e.*, analyzing whether an adverse employment action occurred as retaliation for the exercise of a First Amendment right.  Those cases are distinguishable from the present case as there is no allegation of retributory conduct aimed at Decedent, nor, for that matter, any allegation of anyone exercising their First Amendment rights.  Because of the lack of First Amendment expression, this case is more properly analyzed under the Fourteenth Amendment, which, as noted above, does not allow for a constitutionally protected liberty interest under the facts alleged.

Finally, in *Sykes v. McPhillips*, a case with similar facts to those stated herein, at oral argument, the plaintiffs defended against the pending dispositive motion by urging the court to follow the Second Circuit rulings in *Adler* and *Patel* and find that no allegation of intentional interference is required.  *Sykes v. McPhillips*, Civ. No. 5:04-CV-0068 (DNH/DEP) (N.D.N.Y.), Dkt. No. 98, Tr. of Proceedings, at p. 23.[3]  The Honorable David N. Hurd, United States District Judge, ruled from the bench that, though no specific allegation of intent was put forth, defendants were not entitled to summary judgment since their alleged actions "were likely to have the effect of ending the relationships."  *Id.* at p. 28 (citing *Adler v. Pataki*, 185 F.3d at 43-44).  For the reasons stated above, we respectfully disagree with Judge Hurd's stance and believe that his reliance on *Adler* for the stated proposition is misplaced.  Instead, we join those courts in finding that the Due Process Clause "only protects against *deliberate* violations of a parent's fundamental rights – that is, where the state action at issue was specifically aimed at interfering with protected aspects of the parent-child relationship."  *McCurdy v. Dodd*, 352 F.3d at 827-28 (emphasis added).  Without pleading the necessary element of intentional interference, Plaintiffs have failed to allege that they had a

---

[3] The Court takes judicial notice of Judge Hurd's ruling as it is "capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned."  Fed. R. Evid. 201(b)(2).

protected liberty interest in maintaining a relationship with their adult child/sibling.  Affording Plaintiffs "a constitutional due process right to recover against the state in these circumstances would create the risk of constitutionalizing all torts against individuals who happen to have families." *Russ v. Watts*, 414 F.3d at 790.  There are no allegations in the Complaint which state that Defendants acted with the specific intent to deprive Plaintiffs of their intimate association with Decedent.  As such, we find that there is no recognized liberty interest at issue and so no plausible cause of action has been stated.  Accordingly, Defendants' Motion for Dismissal should be **granted** as to Decedent's Family's  individual claims.

### C.  Eighth Amendment Claims

Defendants contend that Plaintiffs fail to state a facially plausible Eighth Amendment claim. For the reasons stated above, we agree that as to Decedent's Family, there can be no derivative deliberate indifference claim.  Thus, to the extent Decedent's family members intended to assert their own Eighth Amendment claims, we recommend that such claims be **dismissed**. We turn now to assess whether Decedent, through his estate, has stated a valid Eighth Amendment claim.

The Eighth Amendment to the United States Constitution prohibits cruel and unusual punishment.  Prohibited punishment includes that which "involve[s] the unnecessary and wanton infliction of pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)).  "In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove deliberate indifference to [his] serious medical needs." *Smith v. Carpenter*, 316 F.3d 178, 183 (2d Cir. 2003) (internal quotation marks and citations omitted) (alteration in original).  This standard contains both objective and subjective elements. *Id.* "The objective 'medical need' element measures the severity of the alleged

*-13-*

deprivation, while the subjective 'deliberate indifference' element ensures that the defendant prison official acted with a sufficiently culpable state of mind." *Id.* at 183-84 (citing *Chance v. Armstrong*, 143 F.3d at 702 & *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)). The subjective element "entails something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Hathaway v. Coughlin*, 99 F.3d at 553 (quoting *Farmer v. Brennan*, 511 U.S. 825, 835 (1994)).

In this case, Decedent, through is estate, alleges that he suffered from a serious medical condition in the form of a tooth abscess. Defendants do not attempt to undermine nor otherwise challenge the seriousness of Decedent's medical condition under the Eighth Amendment and, therefore, we shall presume for the purposes of addressing this Motion that Decedent suffered from an objectively serious medical condition under the Eighth Amendment. *See* Defs.' Mot. to Dismiss at pp. 10-20. As such, our discussion must necessarily focus on the second prong of the Eighth Amendment standard, *i.e.*, whether Plaintiffs have stated a facially plausible claim of deliberate indifference.

### 1. *Defendants Hayth, Gorg, and Haluska*

Plaintiff alleges that Defendants Hayth, Gorg, and Haluska displayed a deliberate indifference to Decedent's serious medical needs in their treatment of his condition. Specifically, Plaintiff alleges that on September 10, 2007, Hayth was made aware that Decedent requested emergency medical care for his tooth abscess, that he was in excruciating pain and had a dramatically swollen face and bleeding mouth, and that he had vomited while awaiting treatment. Compl. at ¶¶ 26-32. Plaintiff alleges that despite such knowledge, Hayth offered Decedent no treatment, failed to examine him, and abandoned him. *Id.* at ¶¶ 33-35.

With respect to Defendant Gorg, Plaintiff similarly alleges that on September 10, 2007, Gorg was made aware of Decedent's request for emergency medical care for his tooth abscess, and that he was in excruciating pain and had a dramatically swollen face and bleeding mouth. *Id.* at ¶¶ 36-39. Plaintiff alleges that Gorg failed to provide Decedent with antibiotics and furthermore, that he failed to effectuate the initiation of any emergency medical treatment whatsoever. *Id.* at ¶¶ 40-44. Plaintiff also alleges that on September 11, 2007, Gorg again failed to provide any treatment to Decedent despite his grossly swollen face, difficulty swallowing, pain, and sleeplessness. *Id.* at ¶¶ 46-47.

As per Defendant Haluska, Plaintiff alleges that he has treated Decedent for his serious medical conditions, including diabetes, since the start of his confinement at Southport in July 2007. *Id.* at ¶ 51. It is further alleged that at approximately 5:30 p.m. on September 10th, a nurse informed Haluska of Decedent's condition, however, Haluska simply ordered that Decedent be given Tylenol and did not otherwise effectuate the initiation of emergency medical treatment. *Id.* at ¶¶ 51-53 & 61. Moreover, Plaintiff asserts that Haluska should have provided Decedent with antibiotics and that Haluska's failure to stop Decedent from receiving Coumadin, a drug that is contra-indicated for patients with tooth abscesses, led directly to Decedent's death. *Id.* at ¶¶ 55-61 & 67.

Defendants Hayth, Gorg, and Haluska move for dismissal on the following grounds, respectively: (1) it was not within Hayth's job description as a dental hygienist to treat Decedent's tooth abscess; (2) Gorg, as a registered nurse, was not authorized to prescribe antibiotics or treat patients except under doctor's orders or supervision; and (3) Haluska could not have been deliberately indifferent because he provided Decedent with Tylenol and Decedent was ultimately transferred to a hospital. Defs.' Mem. of Law at pp. 19-20.

Defendants' arguments are without merit.  Irrespective of what duties and responsibilities each of the above three Defendants may have had, Plaintiff has alleged that all three disregarded Decedent's requests for urgent treatment despite his obvious pain and serious medical condition, failed to initiate the processes by which proper treatment could be administered, and ultimately abandoned him.  These allegations are sufficient to allege a facially plausible claim of deliberate indifference under the Eighth Amendment.  Discovery may reveal that these Defendants' actions were merely negligent, or perhaps even completely justified, but at this early stage of the litigation, our task is not to determine such facts but merely to assess the facial validity of the Complaint.

For the above reasons, it is recommended that Defendants' Motion to Dismiss Defendants Hayth, Gorg and Haluska be **denied**.

### 2. *Defendants Wright, Napoli, and Felker*

Plaintiff asserts supervisory liability claims against Defendants DOCS's Chief Medical Officer Wright, Southport Superintendent Napoli, and Southport Nurse Administrator Felker.  In sum and substance, Plaintiff alleges that Wright, Napoli, and Felker, along with Haluska, "designed and implemented Southport's wholly inadequate system of providing emergent medical, dental and nursing care to the 700 inmates confined in solitary at the facility," thereby "creating a foreseeable risk of harm to the decedent."  Pls.' Resp. at p. 16; *see also* Compl. at ¶¶ 68-76 & 81-85.

The Second Circuit has held that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citations omitted).  Moreover, "the doctrine of *respondeat superior* cannot be applied to section 1983 actions to satisfy the prerequisite of personal involvement." *Kinch v. Artuz*, 1997 WL 576038, at *2 (S.D.N.Y. Sept. 15, 1997) (citing *Colon v. Coughlin*, 58 F.3d 865,

874 (2d Cir. 1995) & *Wright v. Smith*, 21 F.3d at 501) (further citations omitted).  Thus,  "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the constitution."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948 (2009)

Nevertheless, if a plaintiff seeks to bring a § 1983 action for supervisory liability, liability on the part of the supervisor may exist

> in one or more of the following ways: 1) actual direct participation in the constitutional violation, 2) failure to remedy a wrong after being informed through a report or appeal, 3) creation of a policy or custom that sanctioned conduct amounting to a constitutional violation, or allowing such a policy or custom to continue, 4) grossly negligent supervision of subordinates who committed a violation, or 5) failure to act on information indicating that unconstitutional acts were occurring.

*Hernandez v. Keane*, 341 F.3d 137, 145 (2d Cir. 2003) (citing *Colon v. Coughlin*, 58 F.3d at 873) (further citations omitted).

In this case, Plaintiff has asserted valid supervisory liability claims through the third and fourth avenues listed above.  First, Plaintiffs allege that Defendants "created a policy or custom under which unconstitutional practices occurred" by failing to adequately train and supervise the medical staff at Southport and to provide sufficient resources and/or personnel to adequately treat the Southport prison population.  *Colon v. Coughlin*, 58 F.3d at 873.  Second, Plaintiffs allege that Defendants Wright, Napoli, and Felker were grossly negligent in their supervision of the subordinate medical staff at Southport.  *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001).  In *Todaro v. Ward*, the Second Circuit held that the "Constitution does not stand in the way of a broader attack on the adequacy of an institute's entire health care system which threatens the well-being of many individuals."  565 F.2d 48, 52 (2d Cir. 1977); *see also Smiley by Smiley v. Westby*, 1994 WL 519973, at *14 (S.D.N.Y. Sept. 22, 1994) (noting that a valid supervisory liability claim may be based on a "policy" of deliberate indifference to inmates and failure to properly train medical staff).

Therefore, Defendants' Motion to Dismiss Plaintiff's supervisory liability claims should be **denied** at this stage.[4]

### D.  Pendent Negligence and Medical Malpractice Claims

In his Fifth and Sixth Claims, Plaintiff asserts claims of negligence against Defendants Wright, Napoli, Haluska, and Felker, and medical malpractice against Defendant Haluska. Compl. at ¶¶ 93-96 (Fifth Claim) & 97-99 (Sixth Claim).  Defendants move to dismiss these state law claims on the basis that New York State Correction Law § 24 precludes pendent state law claims brought in federal court against DOCS employees who are sued in their personal capacities based upon activities that fall within the scope of their employment.[5]  Defs.' Mem. of Law at pp. 4-5.

A federal court exercising pendent jurisdiction must apply state law.  *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1996).  "Thus, if state law does not recognize a plaintiff's right to bring an action in state court, a federal court, exercising pendent jurisdiction, sitting as a state court, must follow the state law limitation on jurisdiction."  *Livingston v. Griffin,* 2007 WL 2437433, at *2 (N.D.N.Y. Aug. 22, 2007) (citing *Baker v. Coughlin*, 77 F.3d 12, 15 (2d Cir. 1996)).

Defendants argue that Plaintiff's pendent state law claims are barred by N.Y. CORR. LAW § 24, which reads:

> 1.  No civil action shall be brought in any court of the state, except by the attorney general on behalf of the state, against any officer or employee of the department, in his personal capacity, for damages arising out of any act done or the failure to perform any act within

---

[4] For the same reasons, Plaintiff Andreas Gustov Rindfleisch's facially valid Eighth Amendment claims brought on Decedent's behalf should not be dismissed at this stage of the litigation on qualified immunity grounds.  *See, e.g., McKenna v. Wright*, 386 F.3d 432 (2d Cir. 2004) (affirming district court's denial of defendants' motion to dismiss deliberate indifference claim on qualified immunity grounds when the allegations stated a facially plausible claim based on failure to treat and flawed policies).

[5] Plaintiff does not respond to this facet of Defendants' Motion in its Response.  *See generally* Pls.' Resp.

> the scope of the employment and in the discharge of the duties by
> such officer or employee.
>
> 2. Any claim for damages arising out of any act done or the
> failure to perform any act within the scope of the employment and
> in the discharge of the duties of any officer or employee of the
> department shall be brought and maintained in the court of claims
> as a claim against the state.

Thus, § 24 precludes "the assertion of claims against corrections officers [in their personal capacities] in any court, including the federal courts," by designating the New York State Court of Claims as the only available venue to bring a claim for damages arising out the acts committed by corrections officers within the scope of their employment. *Baker v. Coughlin,* 77 F.3d at 14-15. And, because the Court of Claims is a court of limited jurisdiction, hearing only claims against New York State and no other individual or entity, § 24 amounts to a grant of immunity for corrections officers sued in their personal capacities for claims arising out of the discharge of their duties. N.Y. CT. CLMS. LAW § 9.

The Supreme Court held in *Haywood v. Drown*, __ U.S.__, 129 S. Ct. 2108 (2009), that § 24, when used to relegate to the Court of Claims civil rights actions brought pursuant to 42 U.S.C. § 1983, is inconsistent with the Supremacy Clause, U.S. Const. Art. VI, cl. 2, and therefore, unconstitutional. The *Haywood* Court held that New York State, having created courts of general jurisdiction that routinely hear § 1983 actions against all types of state actors, "is not at liberty to shut the courthouse door to federal claims [against corrections officers] that it considers at odds with its local policy." *Id.* at 2117. The Supreme Court found such selective treatment of § 1983 claims brought against corrections officers to be "contrary to Congress' judgment that *all* persons who violate federal rights while acting under color of state law shall be held liable for damages," and therefore, in violation of the Supremacy Clause. *Id.* at 2115 (emphasis in original).

*-19-*

In this case, Plaintiff has brought state law claims of negligence and medical malpractice. Although the *Haywood* decision found § 24 to be in violation of the Supremacy Clause, it did so only with respect to claims brought under § 1983, a federal statute. A claim brought pursuant to a state law does not implicate the Supremacy Clause, and therefore, the *Haywood* decision does not affect the question of whether this Court has proper jurisdiction to hear these pendent state law claims.

Even after *Haywood*, a New York state court (other than the Court of Claims) would not have jurisdiction to hear Plaintiff's pendent claims, pursuant to § 24, because Plaintiff has alleged acts that clearly fall within the scope of the Defendants' duties as DOCS employees. Therefore, this Court does not have jurisdiction to hear these pendent state law claims, and it is recommended that such claims be **dismissed**. *Baker v. Coughlin,* 77 F.3d at 14-16; *see also, e.g., Crump v. Ekpe*, 2010 WL 502762, at *18 (N.D.N.Y. Feb. 8, 2010) (finding that § 24 precluded plaintiffs' pendent common law negligence claims) & *Cancel v. Mazzuca*, 205 F. Supp. 2d 128, 139 (S.D.N.Y. 2002) (dismissing plaintiff's pendent state law claims pursuant to § 24).

### E.  Eleventh Amendment

The Eleventh Amendment states, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." Although by its terms, the amendment bars suit by citizens of one state against another state, the Supreme Court has held that such amendment similarly bars suits against a state by its own citizens. *Hans v. Louisiana*, 134 U.S. 1 (1890). "The Eleventh Amendment thus 'affirm[s] that the fundamental principle of sovereign immunity limits the grant of judicial authority in Art. III.'" *Richardson v.*

*New York State Dep't of Corr. Servs.*, 180 F.3d 426, 447-48 (2d Cir. 1999) (citing *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100 (1984))).  Thus, sovereign immunity provided for in the Eleventh Amendment prohibits suits against the state, including a state agency, in federal court. *Pennhurst,* 465 U.S. at 98; *Severino v. Negron*, 996 F.2d 1439, 1441 (2d Cir. 1993); *Daisernia v. State of New York*, 582 F. Supp. 792 (N.D.N.Y. 1984).  To the extent a state official is sued for damages in his or her official capacity, "such a suit is deemed to be a suit against the state, and the official is entitled to invoke the eleventh amendment immunity belonging to the state." *Rourke v. New York State Dep't. of Corr. Servs.* 915 F. Supp. 525, 539 (N.D.N.Y. 1995) (citing *Berman Enters., Inc. v. Jorling,* 3 F.3d 602, 606 (2d Cir.), *cert. denied,* 510 U.S. 1073 (1994); *Ying Jing Gan v. City of New York,* 996 F.2d 522, 529 (2d Cir. 1993)); *see also Mathie v. Fries*, 121 F.3d 808, 818 (2d Cir. 1997) ("A claim against a government officer in his official capacity is, and should be treated as, a claim against the entity that employs the officer . . . .").

Based on the face of the Complaint, it does not appear that Plaintiff intends to sue any of the named Defendants in their official capacities and, in its Response, Plaintiff makes clear that he does not. Pls.' Resp. at p. 16 n.8.  However, to the extent Plaintiff intends to sue any Defendant in his or her official capacity, such claims are barred by the Eleventh Amendment and should be **dismissed**.[6]

### III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that the Defendants' Motion to Dismiss (Dkt. No. 15) be **GRANTED in part** and **DENIED in part** in accordance with the above opinion; and it is further

---

[6] Plaintiff is not seeking any injunctive and/or declaratory relief from Defendants.

**RECOMMENDED**, that should the District Court adopt this Report-Recommendation, the only remaining Plaintiff will be Andreas Gustov Rindfleisch solely in his capacity as Administrator of the Estate of Andreas Gustov Rindfleisch IV, and Plaintiff's only remaining claims will be his Eighth Amendment deliberate indifference and supervisory liability claims brought pursuant to § 1983; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), & 6(e).


Date:   August 27, 2010
        Albany, New York



RANDOLPH F. TREECE
United States Magistrate Judge